RAWLS, Judge.
Jacksonville Frosted Foods, Inc. and Arthur Joseph Powers, defendants below, appeal a directed verdict as to liability for compensatory damages and a jury verdict for compensatory and punitive damages rendered in this cause arising out of an automobile accident. The verdict and judgment were in the following amounts:
Compensatory Damages Punitive Damages
For Willie Haigler, Jr.: $1,665.90 $17,640 (Corporation)
8,400 (Powers)
For Willie Haigler: 8,814.10 18,090 (Corporation)
4,900 (Powers)
The justiciable issues involved are: (1) The trial court erred in submitting to the jury the issue of punitive damages as to the corporation; (2) The award of punitive damages as to defendant Powers bears no reasonable relation as to his ability to pay; and (3) The overall award of punitive damages shows that the jury labored under a misconception of the law.
Defendant Arthur Joseph Powers, General Manager, Sales Manager, Vice President, and a member of the Board of Directors of Jacksonville Frosted Foods, Inc., was furnished a company car for his gen *439 eral use. On the day preceding the accident, Powers returned at midnight from an extensive business trip. The next morning, Saturday, March 11, 1967, he arose at 6:00 a. m., arrived at his office at 8:30 a. m., and arranged a fishing trip for two customers on the company yacht. The customers arrived at his office between 10:30 and 11:00 a. m. Powers had a drink of vodka, fixed one in a cup for the drive to the boatyard and had a straight drink from the bottle at the boatyard. At the boatyard they discovered that the yacht had engine trouble so the fishing trip was canceled. Powers returned to his office and stated that he worked and slept until 6:00 p. m., at which time he started for home driving the company-owned automobile. A company employee had warned Powers during the week that the gas pedal on the company automobile he was driving had slipped off but he had not had time to get it fixed. Upon leaving his office that Saturday evening Powers drove some several miles on the Jacksonville Expressway and then traveled on Atlantic Boulevard. While driving in a busines section on Atlantic Boulevard at a speed of 30 to 35 miles per hour, the gas pedal came off and Powers looked down to see what had happened. At that moment appellee Willie Haigler and his son were traveling in the opposite direction on Atlantic Boulevard. Haigler called his son’s attention to the approaching car and observed that it was making an “S”. Powers’ car suddenly crossed over the road. A driver following Haigler’s car testified that he observed the Powers station wagon coming back on the road and pull into the path of Haigler’s car in a sliding position. Haigler and his son were severely injured. Two partially-filled bottles of vodka were found in Powers’ station wagon.
As to the question of intoxication of Powers, the witness who was following Haigler’s car testified that he walked over to the station wagon and observed the occupant on the floorboard with his head on the passenger side and that he did not know if the man was conscious or not; and that he detected “Just a smell, sort of beer or musty odor * * * liquor, whiskey or something like that” emanating from the station wagon. The investigating Highway Patrolman, who assisted in placing Powers on a stretcher, testified that he first observed Powers slumped down on the floorboard “not quite lying down, but in a position, half lying and half sitting; ” that he detected the odor of an alcoholic beverage of some type, but he could not determine whether Powers was intoxicated to any degree or not; that Powers was coherent as to the very few questions asked of him, although rather than answering the questions as to how seriously he was injured, Powers was trying to find out what had happened. The ambulance driver, who helped remove Powers from his car, testified that the patient was more or less incoherent, and he smelled alcohol in the immediate area and observed a “clear bottle with some type label” on the front seat.
Under the foregoing facts, Is the corporation liable for exemplary damages? Exemplary or punitive damages are assessable dependent upon circumstances showing moral turpitude or atrocity in the defendant’s conduct in causing an injury that is wanton and malicious or gross and outrageous to such an extent that the measured compensation of the plaintiff should have an additional amount added thereto as “smart money” against the defendant, by way of punishment or example as a deterrent to others inclined to commit similar wrongs.[1] Generally mere negligence (as distinguished from an intentional injury), in the absence of malice or other essential aggravating elements, will not support a recovery of punitive damages unless the negligence is of a gross and flagrant character, evincing a reckless disregard of human life or of the safety of those exposed to its dangerous effect.[2] It is the province of the *440 court in all cases of claims for punitive or exemplary damages to decide whether or not there is any legal basis for the recovery of such damages shown by any interpretation of the evidence favorable to the plaintiff and relied upon by him to support his claim.[3]
We hold that the corporation was not subject to the imposition of exemplary damages under the foregoing facts, for two reasons, viz.:
(1) Defendant Powers was not acting within the scope of his employment while driving a company-owned automobile from the office to his residence; therefore, his negligence could not be imputed to the corporation ; and
(2) The trial court erred in submitting the question of punitive damages as to the corporation because under the facts adduced there was no legal basis upon which the jury could return a verdict. We are not unmindful of the judicial pronouncement cited by our Supreme Court in Winn & Lovett Grocery Co. v. Archer, supra, viz.:
“There is but one vulnerable point about these ideal existences, called corporations; and that is, the pocket of the monied power that is concealed behind them; and if that is reached they will wince.”
However, under the facts adduced in this record, construed in a light most favorable to plaintiff, this employer furnished two bottles of liquor on Saturday morning for its Sales Manager and his two customers and on Saturday evening an automobile owned by it with a proclivity for the accelerator pedal to part from the linkage was driven by its Sales Manager from the Company’s office toward his home. Such evidence is wholly deficient to support punitive damages against the employer.[4]
As to the liability of Powers for punitive damages, we find a minimal quantum of evidence to support such an award in this record. However, Powers in his brief failed’to argue his assignment of error going to this point but apparently relied primarily upon his assertion that the record is insufficient to justify the amount of the jury’s verdict as to punitive damages against Powers. The record from Powers’ standpoint reflects that he has a net worth of minus $10,000.00. Appellees argue strenuously that Powers is shown to own 8% of the codefendant corporation which reflects an annual profit of substantial sums. We conclude that the record does not support the amount of the award of punitive damages against Powers and, therefore, must be set aside.
Finally, this record reflects substantial injuries to the minor plaintiff, Willie Haig-ler, Jr., which would support a verdict for compensatory damages in a far greater amount than that awarded by the jury. Appellants state in their brief that the facts in this case clearly show prejudice or misconception of the jury. There were six possible jury verdicts under the instructions of the court and a special verdict form as to each tort feasor, but the actual awards made clearly indicate that the jury was confused between the law of compensatory and punitive damages in its application to the facts in the case. We agree.
In view of our conclusion that the punitive damages against the corporation are unwarranted under the facts as disclosed herein; that the amount of the award of punitive damages against the individual appellant, Powers, is not supported by the record; that the quantum of proof supporting any punitive damages as to Powers is minimal, if not entirely deficient as a matter of law; and further that the jury was confused in its verdict in allowing inadequate compensatory damages for *441 plaintiffs, we find that justice under the law dictates that a new trial be had.
Reversed and remanded for a new trial not inconsistent with the views stated herein.
WIGGINTON, C. J., and CARROLL, DONALD K., J., concur.

. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936).

. 9 Fla.Jur., Damages, § 122, and cases cited therein.

. Foremost Dairies, Inc. of the South v. Godwin, 158 Fla. 245, 26 So.2d 773 (1946).

. M R & R Trucking Company v. Griffin, 198 So.2d 879 (Fla.App.1st 1967).